```
         IN THE UNITED STATES DISTRICT COURT
        FOR THE NORTHERN DISTRICT OF ILLINOIS
                   EASTERN DIVISION
```

| | |
|---|---|
| **HELEN OWENS,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   No. 05 C 3751 |
| | ) |
| **ST. AGNES HEALTHCARE and ST.** | ) |
| **AGNES NURSING CENTER,** | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

*Pro se* plaintiff Helen Owen filed a three count complaint against defendants St. Agnes Healthcare and St. Agnes Nursing Center (collectively "St. Agnes") alleging violations of the Americans with Disability Act ("ADA"). Specifically, Owens alleges discrimination based on disability, that St. Agnes failed to accommodate her purported disability, and retaliatory discharge. Defendants have moved for summary judgment on all counts. For the following reasons, the defendants' motion is granted.

I.

St. Agnes is a nursing facility which provides long-term care to elderly patients. Owens first became employed by St. Agnes as a certified nursing assistant ("CNA") in April of 2000. As a CNA, Owens' responsibilities included feeding, dressing, bathing, transporting, and generally assisting patients within the facility. Owens worked the night shift, from 11 p.m. to 7 a.m. (the "11-7 shift").

In October 2004, the management at St. Agnes began receiving complaints from staff members regarding Owens. The written complaints stated that Owens was being uncooperative, disrespectful to the staff, leaving her work station without permission, making false accusations against various staff members, and improperly eating at the nurses' station. In response, the assistant director of nursing, Betty McKenzie and CNA supervisor Ann Davidson met with Owens on November 3, 2004. When confronted with the complaints Owens defended herself by saying that people were framing and harassing her and that everyone sleeps on the job. The next day, the director of nursing, Herminia Sobremisana, and Davidson met with Owens again. Owens reiterated that she was being framed and told them there was a mafia at St. Agnes. She also told them she had filed a lawsuit against Governor Ryan, and that the government was coming after her. At that time, management decided Owens should be subject to closer supervision on the job and gave her the option of transferring to another shift that would facilitate supervision, for management was generally not present during the night shift.

On November 9, 2004, Owens began working a day shift from 3 p.m. to 11 p.m. ("the 3-11 shift"). She did so for seven days that month and then went on medical leave. Medical records indicate that in November Owens was treated for a back sprain and was given a return to work verification form indicating she was able to

return to work on November 27. Owens then visited the hospital again in early December for her back injury. Ultimately, she was told by doctors that she could return to work on January 3, 2005 and she was on leave from St. Agnes until that date.

During Owens' medical leave, on or about December 1, the management at St. Agnes received another written complaint regarding Owens. This complaint was signed by seventeen employees who worked with Owens on the 11-7 shift and stated that they would not be willing to work with plaintiff again. The complaint alleged that Owens had exhibited threatening behavior towards staff, including threats that she was able to "kill" them and not go to jail because she was schizophrenic; used obscene language directed towards staff; made false accusations that a staff member was killing patients and had sent a respiratory therapist to have sex with her; falsely accused staff of pouring urine on her patients; accusations that her supervisors were running a mafia at St. Agnes; threatened to sue St. Agnes if she lost her job; and had a lack of cooperation in patient care.

On December 29, while still on leave, Owens contacted St. Agnes and informed them that she would only be able to work the 11-7 shift. Upon her return on January 3, St. Agnes terminated her employment based on Owens' misconduct identified in the written complaint by staff. In response, Owens filed a grievance with her union. At a meeting with union and St. Agnes representatives, the

parties agreed to reinstate Owens on the condition that she not work the 11-7 shift. Owens agreed to work the 7-3 shift beginning on January 17.

Owens worked January 17, failed to work the next day, worked again on January 19, and then called in on January 20 to inform St. Agnes that she was too sick to work and did not know when she would be returning. She did not provide any medical records to that effect. On January 21, St. Agnes decided to terminate Owens' in light of her poor attendance and the previous employee complaints. A formal letter of termination was sent to Owens via certified mail on January 25.

Owens filed a formal charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). Owens alleged discrimination based on disability and retaliation for having complained of discrimination. She did not identify her disability. The EEOC issued a right to sue on March 29, 2005. Owens then filed the present complaint.

II.

Summary judgment is appropriate where the record shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Timmons v. Gen. Motors Corp.*, 469 F.3d 1122, 1125 (7th Cir. 2006); FED. R. CIV. P. 56(c). I must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in favor of

4

that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). I must also remain mindful of Owens *pro se* status. *See Hudson v. McHugh*, 148 F.3d 859, 864 (7th Cir. 1998); *Philipper v. Dorn*, No. 98 C 7722, 1999 WL 558123, at *6 (N.D. Ill. 1999) (Pallmeyer, J.).

III.

"To make out a claim under the ADA, an individual must show: 1) that she is disabled; 2) that she is otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; and 3) that the employer took an adverse job action against her because of her disability or failed to make a reasonable accommodation." *Stevens v. Illinois Dep't Of Transp.*, 210 F.3d 732, 736 (7th Cir. 2000) (citations omitted). Under the first element of a *prima facie* disability claim, an individual is considered to have a disability under the ADA if 1) he has an impairment that substantially limits one or more of his major life activities; 2) he has a record of such an impairment; or 3) his employer regards him as having such an impairment. *Kampmier v. Emeritus Corp.*, 472 F.3d 930, 937 (7th Cir. 2007) (citing 42 U.S.C. § 12102).

Owens fails to identify her alleged impairment in her complaint, EEOC charge, or response to the motion for summary

5

judgment.[1]  During her deposition, she claimed to suffer from major depression and stress. (Dep. at 51.) Owens also complained of back injuries, a strained wrist, and a thyroid condition. At her deposition, Owens failed to identify how she is impaired in any major life activities. While she complained that she was unable to walk due to her back injuries for a period of approximately three weeks in November 2004, she testified she was able to recover after taking medications. Similarly, Owens testified that her depression

---

[1] In opposition to defendants' motion for summary judgment Owens has submitted an affidavit which references (a) the events surrounding a settlement conference with Judge Keys; (b) Owens' allegations that her deposition transcript had been tampered (I have reviewed the entire transcript and find no evidence of tampering); (c) cases or orders before Judge Andersen, Judge Kocoras, and Judge Norgle; (d) Owens' own description of her job responsibilities; and (e) Owens' allegations that she was wrongfully terminated because of unspecified work related injuries. Owens has also submitted the following documents: (1) this court's order referring the case for a settlement conference before Judge Keys; (2) a letter dated January 27, 2006 from defendants' counsel containing St. Agnes' offer to settle for $500.00; (3) a copy of a Chicago Sun-Times article dated January 6, 2006 entitled "O'Brien can stay at O'Hare –with fine partner: Restaurant has new certified business but must pay $60,000"; (4) a copy of a Chicago Sun-Times article dated Sept 3, 2005 entitled "O'Brien's restaurant ousted from O'Hare: Eatery lacks minority partner, must close in five weeks"; (5) a copy of a December 3, 2004 letter from Owens to St. Agnes in which she indicates she was injured at work and St. Agnes knew of her injuries; (6) photocopies of paycheck stubs; (7) her discharge records from the Cook County Bureau of Health Services regarding back sprains; (7) return to work verification forms; (8) a "missed punch(s) slip" indicting Owens forgot to punch in her time card for a shift at work; (9) a memo from Peter O'Brien to administrators and staff at St. Agnes regarding the necessity of employees punching in for a shift at work; (10) dates and times of Owens' EEOC appointments; (11) a copy of the certified termination letter sent to Owens on January 3, 2005; (12) a copy of Owens' grievance report filed with her union; and (13) proof of service upon St. Agnes.

did not interfere with her ability to work or care for her patients. There is no evidence in the record, medical or otherwise, that would suggest Owens is substantially limited in any major life activities as a result of any of her alleged impairments or any other unspecified impairments. Nor is there any evidence that St. Agnes perceived any of Owens' specifically alleged impairments, in particular the back sprain, as substantially limiting in any major life activity. This is underscored by St. Agnes' willingness to re-hire Owens to work in a different shift after her initial termination as well the return to work verification forms submitted by Owens to St. Agnes which indicated she would recover from her back sprain. *See Kampmier,* 472 F.3d at 938. Accordingly, even viewing all of the facts in the light most favorable to Owens, plaintiff cannot make out a claim under ADA and defendants are entitled to summary judgment.

Even assuming Owens could establish she was disabled within the meaning of the ADA, she cannot establish there are triable issues of fact with respect to her discrimination and retaliation claims. Under the direct method of proof, plaintiff must present evidence that she suffered from an adverse employment action because of her disability. *See Squibb v. Mem'l Med. Ctr.*, No. 06-2389, - - F.3d - -, 2007 WL 2325173, at **8-9 (7th Cir. Aug. 16, 2007); *Kampmier,* 472 F.3d at 937; *see also Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 502-03 (7th Cir. 2004). Owens has no direct

7

evidence that St. Agnes' actions were based upon the prohibited animus, and therefore must present circumstantial evidence that "allows a jury to infer intentional discrimination by the decisionmaker." *Rogers v. City of Chicago*, 320 F.3d 748, 753 (7th Cir. 2003) (citations omitted); *see also Squibb*, 2007 WL 2325173, at \*\*8-9. Owens also fails to point to any circumstantial evidence supporting her discrimination and retaliation claims under the direct method. This is consistent with the unidentifiable nature of her alleged disability. As set forth in the record, Owens was re-hired despite having been on medical leave and filing a grievance with her union, and she was offered the opportunity to work during any of the day shifts in light of the night shift staff's complaints. Moreover, even if the record were to sustain Owens' discrimination and retaliation claims, it does not support the claim that St. Agnes' proffered reasons for termination and changing her shift were pretextual. *See Buie*, 366 F.3d at 503.

Under the indirect method, Owens must show she was meeting her employer's expectations; was subject to an adverse employment action; and similarly situated employees received more favorable treatment. *Squibb*, 2007 WL 2325173, at \*9; *Kampmier,* 472 F.3d at 937. In addition, to establish retaliation Owens would also have to show she engaged in protected activity. *Squibb*, 2007 WL 2325173, at \*9.

In this case, there is no evidence or allegation concerning

8

similarly situated employees and the record establishes that Owens was not meeting her employer's expectations based on St. Agnes' attendance policy (which Owens accepted and signed as a condition of her employment) and the complaints about Owens' conduct by fellow staff members. Accordingly, summary judgment is appropriate.

Nor do any triable issues exist with respect to Owens' failure to accommodate claim to the extent that Owens complains about St. Agnes' refusal to reinstate her in the 11-7 shift. In light of the seventeen staff members' complaints concerning Owens' conduct, their fear for their safety around Owens and their refusal to work with Owens, reinstating Owens in the 11-7 shift would not have been a "reasonable" accommodation because it would have imposed "undue hardship" on St. Agnes. *See E.E.O.C. v. Sears, Roebuck, & Co.*, 417 F.3d 789, 802 (7th Cir. 2005). Therefore, defendants are entitled to summary judgment.

IV.

For the foregoing reasons, defendants' motion for summary judgment is granted.

**ENTER ORDER:**

_____

**Elaine E. Bucklo**
United States District Judge

Dated: September 28\_\_, 2007